# In the United States Court of Federal Claims

No. 23-1268

(Filed:  29 September 2023[*])

```
*****************************************
HEALTH NET FEDERAL SERVICES,        *
LLC,                                *
                                    *
                Plaintiff,          *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *
                                    *
                Defendant,          *
                                    *
and                                 *
                                    *
TRIWEST HEALTHCARE ALLIANCE         *
CORPORATION,                        *
                                    *
                Defendant-Intervenor. *
                                    *
*****************************************
```

*Amy L. O'Sullivan*, with whom were *Robert J. Sneckenberg*, *Cherie J. Owen*, *James G. Peyster*, *William B. O'Reilly*, *Zachary H. Schroeder*, *Issac D. Schabes*, and *David H. Favre III*, Crowell & Moring LLP, all of Washington, DC, for plaintiff.

*William P. Rayel*, Senior Trial Counsel, with whom were *Douglas K. Mickle*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, *Michael R. Bibbo* and *Song U. Kim*, Defense Health Agency, Office of General Counsel, all of Washington, DC, for defendant.

*Marcia G. Madsen*, with whom were *Luke Levasseur*, and *Evan C. Williams*, Mayer Brown LLP, *Robert S. Ryland*, *H. Boyd Greene*, and *Ashley Pincock*, Kirkland & Ellis LLP, *Kathleen C. Little*, *Robert J. Rothwell*, *Robert D. Vander Lugt*, *Amanda J. Dietrick*, and *Jenny J. Yang*, Little, Rothwell & Vander Lugt PLLC, all of Washington, DC, for defendant-intervenor.

---

[*] This opinion was originally filed under seal on 26 September 2023 pursuant to the protective order in this case. The Court provided the parties an opportunity to review this opinion for any proprietary, confidential, or other protected information and submit proposed redactions by 29 September 2023 at 12:00p.m. (ET).  The parties proposed redactions on 29 September 2023 by the deadline.  The Court accepts the parties' proposed redactions and reissues the order, with a few minor, non-substantive corrections and redacted language replaced as follows: "[XXXXX]."

## OPINION AND ORDER

**HOLTE, Judge.**

Plaintiff Health Net Federal Services, LLC brings this post-award bid protest challenging the Defense Health Agency's award of a firm-fixed price contract providing health care services to defendant-intervenor TriWest Healthcare Alliance Corporation.  Plaintiff alleges TriWest made multiple material misrepresentations in its Small Business Participation submission and its responsibility communications with the agency and, therefore, is ineligible for award.  After filing its Complaint, plaintiff filed its Motion for Discovery and Supplementation of the Administrative Record and its Supplemental Motion for Discovery and Supplementation of the Administrative Record in support of its material misrepresentation claim.  The Court may grant discovery and supplementation only if necessary for judicial review or the requested documentation could not have been in the record at the time the government made its decision.  Here, supplementation is not warranted because the agency:  (1) considered the issues raised by plaintiff during corrective action; and (2) reviewed, to the extent it deemed necessary, the information and documentation plaintiff now requests be added to the record.  In the words of TriWest's counsel, "TriWest made mistakes.  TriWest owned up to them.  TriWest explained them.  The agency didn't ignore them.  The agency pursued them, two, three rounds of discussions."[1]  The Court therefore denies plaintiff's Motion for Discovery and Supplementation of the Administrative Record and plaintiff's Supplemental Motion for Discovery and Supplementation of the Administrative Record.

## I.    History of Solicitation, GAO Protests, and Court of Federal Claims Protest

### A.    Solicitation and Award

Plaintiff[2] is a Sacramento, California-based managed care support contractor.  Compl. Ex. 1 ("GAO Decision"), at 2, ECF No. 1-2.  On 15 April 2021, the Department of Defense ("DoD"), Defense Health Agency ("DHA")[3] issued a Request for Proposals ("RFP") for a "managed care support contract for . . . the western region of the United States" (the "T-5 RFP").  *Id.* (footnote omitted).  The more than $65 billion contract "involve[s] providing a suite of services for TRICARE beneficiaries analogous to the services provided by a conventional commercial health insurance provider . . . negotiat[ing] discounts with healthcare providers on behalf of [DHA] . . . and integrat[ing] open market healthcare with the military's direct care system."  Compl. ¶ 1, ECF No. 1; GAO Decision at 2.  The managed-care support contractor is responsible for creating "networks of healthcare providers," "process[ing] claims," and providing "customer service" to TRICARE beneficiaries, including "military members and their families."  GAO Decision at 2.  TRICARE supplements the federal governments "military hospitals [and] clinics" and enables "military members and their families . . . [to purchase healthcare services] on the open market."  *Id.*

---

[1] 19 Sept. 2023 Oral Arg. Tr. ("Tr.") at 117:15–18.
[2] The Court refers to plaintiff Health Net Federal Services, LLC alternatively as "plaintiff," "Health Net," and "HNFS" in this Opinion and Order.
[3] The Court refers to the Defense Health Agency alternatively as "DHA" and "the agency" in this Opinion and Order.

Plaintiff is the "incumbent TRICARE managed care support contractor for the western region" and "has managed health care programs for [DoD] . . . for more than three decades." GAO Decision at 3; Compl. ¶ 13.  The T-5 RFP "provided that the government would make award on the basis of a best-value tradeoff considering three factors, which are listed in descending order of importance:  (1) technical/risk; (2) past performance; and (3) price/cost." GAO Decision at 3 (citing AR at 305–06 (T-5 RFP)).  The RFP further noted DHA "would evaluate . . . small business participation . . . on an acceptable/unacceptable basis." *Id.* Offerors "would need to be rated acceptable to be eligible for award." *Id.* The T-5 RFP committed DHA to evaluating each factor according to a series of subfactors. *Id.*

In February 2022, "DHA established a competitive range, including" plaintiff and awardee/defendant-intervenor.  Compl. ¶ 30.  Plaintiff "timely submitted its final revised . . . proposal" on 20 July 2022. *Id.* ¶ 31.  On 22 December 2022, "DHA notified [plaintiff] that [defendant-intervenor] had been selected for the award." *Id.* ¶ 32.

**B.    First GAO Protest and Corrective Action**

Plaintiff filed its initial protest with the Government Accountability Office ("GAO") on 17 January 2023 arguing defendant-intervenor "improperly excluded contracts [when calculating its small business participation]."  GAO Decision at 6.  Plaintiff contended defendant-intervenor[4] "improperly excluded contracts held by its non-profit owners on the basis that they were affiliates" even though defendant-intervenor's "consortium of [non-profit] owners do not meet the applicable legal definitions of affiliates." *Id.* "Following that protest, [DHA] indicated that it intended to take corrective action by reevaluating the small business participation factor and reopening discussions with respect to that factor." *Id.* GAO therefore "dismissed [plaintiff's first] protest as academic." *Id.* (citing *Health Net Fed. Servs.*, B-421405 (Comp. Gen. Feb. 9, 2023) (unpublished decision)).

Clarifying DHA "intended to use the definition of 'affiliates' at FAR 2.101 . . . [DHA] then permitted offerors to submit new small business plans."[5] *Id.* Plaintiff "declined to do so," but defendant-intervenor "submitted a new plan," which included "certain categories of subcontracts" defendant-intervenor "previously excluded, but that the solicitation required to be included."  GAO Decision at 6.  Following discussions with defendant-intervenor after which the DHA contracting officer ("CO") "concluded that [defendant-intervenor] was responsible," DHA "again made award to TriWest on April 20, 2023." *Id.* at 7.  Plaintiff then filed its second protest with GAO.  GAO Decision at 7.

**C.    Second GAO Protest**

---

[4] The Court refers to defendant-intervenor TriWest alternatively as "TriWest," "defendant-intervenor," "awardee," and "TW" in this Opinion and Order.

[5] With certain exceptions not relevant here, FAR 2.101 defines "affiliates" as "associated business concerns or individuals if, directly or indirectly either one controls or can control the other; or third party controls or can control both."

In its second GAO protest, plaintiff challenged DHA's "evaluation of the technical/management risk, past performance, and small business participation factors . . . [and alleged] that the awardee made several material misrepresentations related to its . . . small business utilization." *Id.* Reviewing "the record to determine whether the agency's evaluation was reasonable and consistent with the stated evaluation criteria and with applicable procurement statutes and regulations," GAO denied all counts of plaintiff's protest. *Id.* at 11, 33 (citing *AECOM Mgmt. Servs., Inc.*, B-417639.2 et al., 2019 CPD ¶ 322 at 9 (Comp. Gen. Sept. 16, 2023)).

### D.    Court of Federal Claims Protest

Finding no relief from its first two protest attempts, plaintiff filed suit in this Court on 8 August 2023. *See* Compl. Concurrently with its Complaint, plaintiff submitted: (1) a motion for leave to file under seal, ECF No. 3; and (2) a motion for a protective order, ECF No. 4. Defendant-intervenor filed its Unopposed Motion to Intervene on 9 August 2023, ECF No. 10. On 10 August 2023, the Court granted defendant-intervenor's Motion to Intervene and scheduled an initial status conference, ECF No. 12. On 11 August 2023, the parties filed a joint status report, ECF No. 13, proposing a schedule for proceedings in this case and informing the Court of defendants' positions on plaintiff's pending motions.

On 22 August 2023, plaintiff filed its Motion for Discovery and Supplementation of the Administrative Record ("First Mot. for Disc. and Suppl."), ECF No. 30. On 28 August 2023, plaintiff filed a Supplemental Motion for Discovery and Supplementation of the Administrative Record ("Second Mot. for Disc. and Suppl."), ECF No. 32. On 1 September 2023, TriWest filed its Opposition to Plaintiff's Motions for Discovery and Supplementation of the Administrative Record ("TriWest's Resp."), ECF No. 41. The government, also on 1 September 2023, filed a response to plaintiff's motions ("Gov't's Resp."), ECF No. 42. On 7 September 2023, plaintiff filed a reply in support of its Motion for Discovery and Supplementation of the Administrative Record ("Pl.'s Reply"), ECF No. 43.

On 19 September 2023, the Court held oral argument on plaintiff's Motion for Discovery and Supplementation of the Administrative Record and Supplemental Motion for Discovery and Supplementation of the Administrative Record. *See* Order, ECF No. 47. On 20 September 2023, the government filed its Unopposed Motion to Amend the Administrative Record, ECF No. 49, with network adequacy report documentation unrelated to plaintiff's earlier motions.[6]

## II.    Parties' Arguments on Discovery and Supplementation of the Administrative Record

Plaintiff contends TriWest should provide additional documents and answer interrogatories because TriWest made material misrepresentations to the government. 19 Sept. 2023 Oral Arg. Tr. ("Tr.") at 23:10–16 ("While we have raised separate evaluation issues and allegations subject to the standard, the arbitrary and capricious standard, we have also raised stand-alone misrepresentation allegations. So these are, in essence, issues to be determined first. . . . Whether the agency had the information or not."). Plaintiff argues "absent production,

---

[6] The Court grants the government's Unopposed Motion to Amend the Administrative Record, ECF No. 49.

these documents, which go to the heart of HNFS' misrepresentation claims, will not be included in the administrative record, preventing effective judicial review of HNFS' allegations." First Mot. for Disc. and Suppl. at 14. Originally, plaintiff asked the Court to order the production of "(1) TriWest's Healthcare Network Agreements and Strategic Alliance Agreements; (2) the 2009 email correspondence between TriWest and TRICARE management activity Contracting Officer Bruce Mitterer; and (3) all executed teaming agreements, subcontracts, contracts or amendments thereto for TriWest's proposed T-5 subcontractors . . . ." *Id.* Plaintiff also requests the Court order TriWest to answer six interrogatories. *Id.* at 24. Plaintiff reasons "TriWest's responses will provide answers to questions that are otherwise unaddressed by the record or not clearly addressed in documents that are likely to be in TriWest's or DHA's possession. Moreover, HNFS' limited proposed interrogatories are a more efficient way to obtain the relevant factual information than broad-scale document production on these topics." *Id.*

On 28 August 2023, plaintiff filed its Supplemental Motion for Discovery and Supplementation of the Administrative Record. Second Mot. for Disc. and Suppl. at 1. The Supplemental Motion clarified plaintiffs "second document request and . . . add[ed] new Interrogatory 7 and new Document Request 4." *Id.* Document Requests 2 and 4 and Interrogatory 7 were later withdrawn. Pl.'s Reply at 1 n.1. In its Supplemental Motion, plaintiff explained: "Inclusion of the 2009 email in the administrative record does not moot HNFS' Document Request 2. HNFS' request sought production of 'the full 2009 email correspondence (including any surrounding communications necessary for context).'" Second Mot. for Disc. and Suppl. at 3 (emphasis omitted). Interrogatory 7 related to the 2009 email: "Explain when and how the Contracting Officer received the 2009 Mitterer email; identify all DHA personnel, other than the Contracting Officer, who reviewed the Mitterer email prior to the corrective action award to TriWest; and explain why DHA did not produce the 2009 Mitterer email before GAO." *Id.* at 6. The new Document Request 4 also related to the 2009 email: "Produce all communication(s) with TriWest (including but not limited to TriWest protest counsel) in which the [g]overnment discussed, requested, and/or received the 2009 Mitterer email or documents related thereto." *Id.* At oral argument, plaintiff conceded these requests were moot after receiving AR TAB 424 and 425, which were added to the administrative record after these discovery requests. *See* Tr. at 91:17–22 ("THE COURT: . . . So now that you have [the 2009 email and corresponding documents] and it is in the AR, no need for the request. [PLAINTIFF]: To the extent that the agency's representations are accurate, that it had that information and it reviewed it, that is correct, Your Honor.").

TriWest argues plaintiff failed to meet the threshold showing of a "plausible claim that TriWest's proposal contained material misrepresentations." TriWest's Resp. at 6. TriWest explains "plaintiffs must present something more than allegations of counsel or innuendo and suspicion to entitle it to discovery in a bid protest proceeding that ordinarily would be confined to the record and subjected to review under the APA's arbitrary and capricious standard." *Id.* TriWest, citing *Blue & Gold*, further explains, "[i]n order to establish a material misrepresentation, HNFS must 'demonstrate that (1) [the awardee] made a false statement; and (2) the [agency] relied upon that false statement in selecting [the awardee's] proposal for the contract award.'" *Id.* (second and third alterations in original) (quoting *Blue & Gold Fleet, LP v. United States*, 70 Fed. Cl. 487, 495 (2006)). TriWest contends, "[e]ven if it is true that TriWest's exclusions were inconsistent with requirements in the FAR as a matter of law, it does

not follow that TriWest's proposal contained a factually false statement," and therefore plaintiff does not meet the necessary threshold standard. *Id.* at 9. TriWest also argues plaintiff's document requests are unnecessary and out of scope: "HNFS asks the Court to supplement the record with material which was not before the agency during its evaluation, for the purpose of asking this Court to conduct a *de novo* review of TriWest's proposal and the evaluation." *Id.* at 20. Similarly, TriWest asserts the interrogatories are overbroad and unrelated to the RFP. *See id.* at 27, 31–32.

The government argues plaintiff seeks improper *de novo* review of the documents it requests and other information it seeks: "If the Court were to supplement the record with documentation that DHA did not consider, but that Health Net alleges is relevant, and determine for itself TriWest's eligibility for award, then the Court would be performing an impermissible *de novo* review." Gov't Resp. at 22. With regard to plaintiff's Second Motion, the government argues the information sought is irrelevant: "The Court should also deny Health Net's new document request and interrogatory directed toward the [g]overnment in Health Net's [S]upplemental [M]otion, as these discovery requests are irrelevant to Health Net's protest grounds." *Id.* at 35.

In its Reply, plaintiff contends it met the required evidentiary standard for material misrepresentation and, therefore, record supplementation: "HNFS has more than sufficiently alleged that TriWest made material misrepresentations in its Factor 4 proposal, its responsibility communications with DHA, and its representations to DHA regarding the three past performance references it relied upon for this procurement." Pl.'s Reply at 10. Plaintiff reiterates discovery and supplementation of the record are necessary: "The [g]overnment is wrong, and the documents must be produced. They specifically address, among other elements, the falsity of TriWest's representations regarding shareholder control." *Id.* at. 14. As discussed *supra*, plaintiff withdrew its Document Request 2 and 4 and Interrogatory 7 in its Reply. *Id.* at 1 n.1.

## III.   Legal Standards

The parties cite Federal Circuit cases *Axiom* and *Impresa* in their briefs and at oral argument in addition to a number of Court of Federal Claims cases. *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001). The Court reviews and discusses each of these cases below.

"It is well settled that the 'primary focus' of the court's review of agency decision making 'should be the materials that were before the agency when it made its final decision.'" *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 166 (2011) (quoting *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 349–50 (1997)). "[T]o perform an effective review pursuant to the APA, the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process." *Vanguard Recovery Assistance v. United States*, 99 Fed. Cl. 81, 92 (2011) (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). "[A]gencies 'exercise some judgment in furnishing the court with the relevant documents'" in the agency record for the court to review. *Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 166 (quoting *Cubic Applications,*

*Inc.*, 37 Fed. Cl. at 350).  "Granting agencies the authority to retroactively create an administrative record once the adversarial process has commenced, however, 'may preclude the "substantial inquiry" and "thorough, probing, in-depth review" the court must perform' in bid protests." *Id.* (quoting *Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147, 156 (1997)).  As a result, "[i]n order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence . . . aimed at determining . . . whether the record provides an adequate explanation to the protestor or the court as to the basis of the agency action." *Cubic Applications, Inc.*, 37 Fed. Cl. at 350.

The Federal Circuit established the standard for supplementation of the administrative record in *Axiom*.  *See Axiom*, 564 F.3d at 1380.  In *Axiom*, the Federal Circuit explained, "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively *de novo* review.'"  564 F.3d at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000)).  "Thus, supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'"  *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735).  When performing this analysis, the Court is "required to explain why the evidence omitted from the record frustrate[s] judicial review as to the ultimate question of whether the award . . . was arbitrary and capricious."  *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (citing *Axiom*, 564 F.3d at 1379–80).

Several other cases outline the standard for misrepresentation.  In *Impresa*, the plaintiff protested the award of a contract to another bidder, alleging the awardee misrepresented a certification that their principals had not been convicted of fraud or a similar offense in the last three years.  *Impresa*, 238 F.3d at 1339.  A former principal of the awardee had, however, been convicted of fraud in connection with a different government contract within the last three years. *Id.* at 1328, 1339–40.  At the Court of Federal Claims, this court held the contracting officer could have reasonably ignored the fraud convictions because nothing in the record "required a determination that the facts available to the [agency] conflicted with representations filed by the awardee." *Id.* at 1330, 1340.  According to this court, the decision to accept the certification was therefore not arbitrary and capricious.  *Id*.  The Federal Circuit disagreed and remanded to this court to allow for a "limited deposition of the contracting officer" to:  (1) determine his actual reasons for accepting the certification; and (2) decide if those reasons were arbitrary and capricious. *Id.* at 1327, 1340.  The Federal Circuit stated, under the legal standard for material misrepresentations, "[i]t is well-established that a contracting officer should consider disqualifying a proposed contractor if a material misrepresentation is made. . . .  Under these circumstances, we must assume that the contracting officer considered the certification and concluded that it was not misleading.  The question is whether this was arbitrary." *Id.* at 1339 (citations omitted).  The Federal Circuit therefore did not order discovery to obtain documentation related to the certification itself, rather it "confined [the ordered deposition] strictly to placing on the record the basis for the contracting officer's responsibility determination. . . . [including] (1) whether the contracting officer . . . possessed or obtained information sufficient to decide the integrity and business ethics issue, including the issue of control, before making a determination of responsibility; and (2) on what basis he made the responsibility determination." *Id.*  The Federal Circuit decided the failure of the awardee to report the indictment of its previous principal raised "serious questions" as to whether there had

been a material misrepresentation. *Id.* at 1340. The record did not include information as to why the contracting officer decided to accept the certification, so the Federal Circuit remanded to require a deposition of the contracting officer to explain. *Id.*

In *Oracle,* the plaintiff Oracle filed a pre-award bid-protest related to the DoD's Joint Enterprise Defense Infrastructure ("JEDI") Cloud procurement. *Oracle Am., Inc. v. United States*, 2019 WL 354705, at *1 (Fed. Cl. Jan. 28, 2019). Plaintiff "filed a motion to complete and supplement the administrative record ('AR') and for leave to conduct limited deposition and document discovery." *Id.* Specifically, plaintiff sought "to complete the record with materials it contends the agency had in front of it during the decision-making process, to supplement the record with material that was not considered, and for leave to conduct limited deposition and document discovery." *Id.* These materials included DoD documents, depositions, and communications between the DoD and Amazon Web Services (AWS), the intervenor. *Id.* at *2. The court denied plaintiff's motion because "[the] government . . . included in the AR the documents that it developed and considered in making the decisions at issue, and plaintiff has not made a sufficient showing for this court to permit supplementation or limited discovery." *Id.* at *6. The court reasoned: "To be granted leave to conduct limited discovery, the protestor must show a 'likelihood that discovery would lead to evidence that would meet the clear and convincing standard' to overcome the presumption of regularity on the merits." *Id.* at *3 (quoting *Starry*, 125 Fed. Cl. at 623). "The protestor must 'make a threshold showing of "motivation for the [g]overnment employees in question to have acted in bad faith or conduct that is hard to explain absent bad faith," and [show] that "discovery could lead to evidence which would provide the level of proof required to overcome the presumption of regularity."'" *Id.* (second alteration in original) (quoting *Starry*, 125 Fed. Cl. at 622).

In *Orion*, plaintiff protested the Army's award of a contract for staff support, alleging misrepresentation by the awardee related to its personnel. *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 339–41 (2004). Plaintiff filed a motion for discovery seeking depositions of the awardee's personnel and the Army's Source Selection Authority (SSA) to unearth knowledge about the awardee's employment history during the solicitation. *Id.* at 340, 344. Specifically, "Orion request[ed] that the Court order the depositions of [three awardee employees and the SAA] . . . [and] request[ed] documents relating to the timing of the Army's offer to hire [one awardee employee] for the position of Technical Director . . . and [his] acceptance of this position." *Id.* at 344. In support of its request, Orion presented communication history between the employee and Fiore discussing his hiring. *Id.* at 340–41. Orion explained "this discovery [would] determine (1) whether Fiore and its representatives misrepresented the identities of its key employees in either its qualification package or its oral presentation to the Army; (2) whether the [g]overnment's decision was based on criteria that were not included in the Solicitation; and (3) whether the [g]overnment properly administered the Solicitation." *Id.* To grant a motion to supplement, the court explained, "the record may be supplemented with (and through discovery a party may seek) relevant information that by its very nature would not be found in an agency record-such as evidence of bad faith, information relied upon but omitted from the paper record, or the content of conversations." *Id.* at 343–44 (footnotes omitted). The court reasoned, "a plaintiff needs more than innuendo or suspicion to entitle it to discovery seeking such evidence." *Id.* at 344 (citing *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1324 n.2 (Fed. Cir. 2003)). The court then granted and denied the motion in part,

based on its analysis of whether plaintiff Orion met the evidentiary threshold for bad faith in its analysis. *Id.* at 346. Referring to the granted aspect of the motion, the court wrote: "[G]iven th[e] possibility [of misrepresentation], [the awardee's] discussions with [the employee], and the plans and contingent plans that he made based on these conversations may be relevant to the present litigation, and are not something that would ever normally be found in an agency's record." *Id.* at 345. According to the Federal Circuit, the plaintiff met the evidentiary threshold for discovery by offering communications that shed light on the alleged misrepresentation. *See id.* The court's reasoning highlights the agency's lack of consideration of the allegation. *See id.* at 344–45 ("[G]iven this possibility [of misrepresentation] . . . these conversations may be relevant . . . .").

In *Golden IT*, plaintiff Golden IT filed a post-award protest challenging the Census Bureau's award of a general IT support contract and raised a plausible misrepresentation claim involving the awardee's personnel. *Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 684–85 (2022). The plaintiff moved to supplement the administrative record in support of its misrepresentation claim. *Id.* at 686. Plaintiff argued part of the Census Bureau's evaluation was "unreasonable, arbitrary, capricious, and otherwise contrary to law" because the awardee improperly characterized one of its key personnel as still employed by the awardee at the time of submission, and therefore, the Census Bureau "should have assigned a weakness to [awardee's] quote—instead of a significant strength" *Id.* at 686, 699. Plaintiff specifically argued the personnel member left the awardee company and "took a position with [another company] before [the awardee] submitted its quote and four months before [the awardee] received an award." *Id.* at 686 (first alteration in original). The court found plaintiff's claim of misrepresentation of a key personnel was enough to trigger discovery: "Either way, one of Golden's claims in this matter is that [the awardee] improperly received a contract award due to [its] misrepresentation of a proposed key personnel . . . [and t]hat claim necessitates this [c]ourt's consideration of evidence that is not contained in the administrative record and, indeed, that no one could reasonably expect to be contained in the administrative record." *Id.* at 688 (citation omitted). The court acknowledged "ordinarily, documents or other evidence not considered by an agency in the course of a procurement decision should not be added to the administrative record that the government files with the [c]ourt in response to an action pursuant to 28 U.S.C. § 1491(b)." *Id.* at 688. Neither party could "explain[] during oral argument how th[e] [c]ourt could possibly evaluate a plausible misrepresentation claim based upon only the evidence in the government's possession," further demonstrating supplementation was necessary. *Id.* Because it could not "possibly evaluate a plausible misrepresentation claim based upon only the evidence in the government's possession," the court determined supplementation was appropriate. *Id.* The court reasoned, "[g]iven the nature of [the] . . . misrepresentation argument, this [c]ourt would be remiss if it did not permit the evidence in question to be added to the record." *Id.* at 688 (citing *Naval Sys., Inc. v. United States*, 153 Fed. Cl. 166, 182 (2021)).

In *Connected Global Solutions*, plaintiff ARC filed a post-award bid protest challenging the DoD's award of a contract for relocation services. *Connected Glob. Sols., LLC v. United States*, 160 Fed. Cl. 420, 423 (2022). Plaintiff argued the awardee materially misrepresented the security level of its information technology system and therefore moved to supplement the administrative record. *Id.* Specifically, "ARC [sought] to augment the administrative record with three categories of documents that [would] support its claim that [the awardee] made a

material proposal misrepresentation regarding [Redacted] commercial technology access management solution." *Id.* at 424. The agency did not consider the misrepresentation allegation during the award process. *See id.* at 424–25. The court granted plaintiff's motion to supplement the record with an exhibit of a screenshot from the Federal Risk and Authorization Management Program ("FedRAMP") website, interrogatories, and a response to a request for admission. *Id.* at 423, 427. Specifically, the court stated the screenshot, which showed the "[Redacted] FedRAMP status at the time [the awardee] submitted its proposal," was necessary for "effective judicial review" because determining "whether [the awardee] misrepresented [Redacted] compliance rating require[d] reviewing the rating in effect when [the awardee] submitted its proposal." *Id.* at 426. The court further permitted documents to supplement the interrogatories, because it could not "effectively review that determination process solely by considering" the administrative record and a declaration produced by the awardee during GAO proceedings. *Id.* at 426. The court explained, it "must grant a request to supplement the administrative record or conduct discovery in a bid protest only 'if necessary for effective judicial review or if the existing record cannot be trusted.'" *Id.* at 423 (first quoting *Diversified Maint. Sys. v. United States*, 93 Fed. Cl. 794, 802 (2010); and then citing *Axiom*, 564 F.3d at 1381). By contrast, a court "should refuse 'to supplement the record,' to permit further 'discovery,' or 'to otherwise add to the record evidence, not previously possessed by the agency' merely because the proponent of such measures believes that it will 'improve the court's "understanding" of a case.'" *Id.* at 427 (quoting *NEQ, LLC v. United States*, 86 Fed. Cl. 592, 593 (2009)). Supplementation was required because the DoD did not review the allegations specifically during the procurement process and the court needed more information to understand the misrepresentation allegations. *See id.* at 424.

In *L-3*, plaintiff challenged the Air Force's award of two contracts relating to the modernization of the C–5 Galaxy aircraft ("C–5 AMP") and raised concerns about the former Principal Deputy Secretary of the Air Force improperly compromising the procurement. *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 91 Fed. Cl. 347, 350 (2010)*, amended on reconsideration in part*, 98 Fed. Cl. 45 (2011). Plaintiff sought to supplement the administrative record with 40 documents, arguing the documents were "necessary for the [c]ourt to adjudicate claims of bad faith, bias, and regulatory violations in the . . . procurement." *L-3*, 91 Fed. Cl. at 351. For example, one of the requests involved documents related to "the ratings changes imposed by [an Air Force Official] during the C–5 AMP procurement." *Id.* at 360. The agency had not properly considered the issue of wrongful influence during the award process because it did not have the chance to during the award process: "The supplementation sought by [p]laintiff in this bid protest encompasses materials that were never considered by the agency in reaching the challenged procurement decision." *Id.* at 357. The court, finding many of these documents necessary for judicial review, granted plaintiff's motion to supplement the record in part: "Given the unusual circumstances of [the Air Force official's] conduct, these documents may illuminate the propriety of that decision or the procurement process. . . . [these documents] are necessary for judicial review . . . [so] they are admitted as supplementation of the AR." *Id.* at 357, 361. The court explained: "While a protester must establish clear and convincing evidence of bad faith or bias to prevail on the merits, a lesser showing suffices—that the allegations 'appear to be sufficiently well grounded'—to warrant supplementation of the administrative record.'" *Id.* at 355 (quoting *Int'l Res. Recovery, Inc. v. United States*, 61 Fed. Cl. 38, 43 (2004)).

In *Starry*, the court granted plaintiff's motion to supplement the administrative record with four depositions in a bid protest related to a Department of Health and Human Services ("HHS") contract for business operations services. *Starry Assocs., Inc. v. United States*, 125 Fed. Cl. 613, 615 (2015). Plaintiff alleged one of HHS's accounting services directors exerted influence to guide the award to the awardee. *Id.* at 616. In granting the motion to supplement, the court explained: "A protestor must present clear and convincing evidence that an agency official acted with bias or in bad faith in order to overcome the presumption of regularity." *Id.* at 623 (citing *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004)). "Supplementation of the record, however, requires a lesser standard—a showing of likelihood that discovery would lead to evidence that would meet the clear and convincing standard." *Id.* (citing *L-3*, 91 Fed. Cl. at 355). One example of this kind of evidence identified by the court there was a lack of documentation of the HHS director's decision-making process. *Id.* The court therefore held depositions were necessary and the plaintiff met the standard for supplementation: "[I]n the face of credible allegations of bias and unexplained agency action, we are left to conclude that the depositions of [the parties] are necessary for the court to resolve the issues presented." *Id.* Specifically, the [c]ourt held "plaintiff meets the burden for showing that its request is likely to lead to evidence that would overcome the presumption of regularity." *Id.*

## IV. Whether the Court Should Grant Plaintiff's Motions for Discovery and Supplementation Because of the Material Misrepresentation Claim

*Impresa* provides a fundamental legal standard for supplementation. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1339 (Fed. Cir. 2001). The Federal Circuit stated courts "must assume that [when] the contracting officer consider[s] the [claimed misrepresentation] and conclude[s] that it was not misleading, . . . [t]he [ultimate] question [for the court] is whether this [conclusion] was arbitrary." *Id.* Like the Federal Circuit in *Impresa*, the Court "assume[s] that the contracting officer considered [TriWest's proposals] and concluded [there] was not [a misrepresentation]." *Id.* To determine whether supplementation and discovery are "necessary for effective judicial review [of the merits of plaintiffs' claims,]" the Court assesses the actions taken by DHA during corrective action, specifically DHA's two evaluation notices to TriWest and DHA's "acceptability" determination in response to TriWest's answers, in light of plaintiff's discovery requests. *Connected Glob. Sols., LLC v. United States*, 160 Fed. Cl. 420, 425 (2022). As explained below, it would "convert the 'arbitrary and capricious' standard into . . . de novo review" were the Court to permit supplementation where DHA affirmatively investigated the issues raised by plaintiff during corrective action and reviewed—to the extent the Agency felt necessary—the documents and information plaintiff now asks the Court to place in the record. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1374 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000)).

The Court first reviews DHA's requests during corrective action to determine the scope of DHA's material misrepresentation investigation. On 17 January 2023, plaintiff filed a protest with the GAO challenging DHA's award of the contract to TriWest. AR TAB 143 at 13936 (Agency Notice of Corrective Action from DHA to GAO). On 6 February 2023, Counsel for DHA filed a Notice of Corrective Action with GAO in response to plaintiff's 17 January 2023 GAO protest regarding TriWest's small business subcontracting plan. *Id.* In this Notice, DHA explained it would "reopen discussions with TriWest to discuss potential flaws in its Factor 4

proposal, accept revisions to its Factor 4 proposal and other proposal volumes if substantiated as related to changes to its small business subcontracting plan, reevaluate TriWest's proposal based on any revisions, . . . make a new best value decision," and take any corresponding corrective action.  *Id.*  DHA also noted in the Notice of Corrective Action "[it] consider[ed] the . . . corrective action to render HNFS' protest academic or moot and . . . respectfully request[ed] that the GAO dismiss the protest."  *Id.*  On 15 February 2023, the DHA sent letters to both plaintiff and TriWest reopening discussions with the parties.  *See* AR TAB 144 at 13938 (TriWest Letter from CO Reopening Discussions and Distributing EN 01); AR TAB 145 at 13944 (Health Net Letter from CO Reopening Discussions and Distributing EN 01).  In these letters, DHA included Evaluation Notice 01 ("EN 01"), which contained questions about the parties' respective proposals.  After reviewing the parties' responses to EN 01, DHA sent follow-up questions in the form of Evaluation Notice 02 ("EN 02") on 24 February 2023.  *See* AR TAB 148 at 13965 (TriWest Letter from CO Reopening Discussions and Distributing EN 02); AR TAB 149 at 13971 (Health Net Letter from CO Reopening Discussions and Distributing EN 02).

In EN 01, DHA asked TriWest about its proposal to learn more about TriWest's exclusions from its subcontracting plan and TriWest's subcontracting structure.  *See* AR TAB 144 (TriWest Letter from CO Reopening Discussions and Distributing EN 01).  Specifically, DHA asked TriWest the following questions:

1) TW's subcontracting plan says, "[s]upplies and services provided by employees, governmental units, government-endorsed monopolies, non-biddable costs, health care agreements with providers, and network arrangements are excluded."  Please clarify what is meant by this sentence.
. . . .
2) . . . Can TW please provide its understanding of [the T-5 TRICARE Operations Manual definition] of ["network provider"] . . . and how it applies to TW's proposed T-5 subcontracting approach?
3) Please provide a rough estimate of the value of contract work excluded under each of the exclusions listed in TW's subcontracting plan . . .
4) Are any of the subcontracting plan's excluded categories "affiliates" as defined in FAR 52.219-9(1)?  If so, please provide additional information supporting this basis for exclusion.
5) Please provide an explanation of TW's corporate structure and business execution plan to provide insight into how work is accomplished, in particular its contractual relationships with BCBS entities.
. . . .
6) What subcontractors does TW propose to utilize to meet its small business subcontracting goals? . . .
. . . .
7) In TriWest's FPR [(Final Proposal Revisions)] Subcontracting plan . . . confirm DHA should use TriWest's subcontracting goals, not [other than small business contractor] PGBA[ LLC]'s subcontracting goals in the evaluation of M.10.1 and M.10.2 [Portion of the RFP addressing Evaluation of Factor 4, Small Business Participation].

8) . . . Can TW explain why PGBA's subcontracting goals (second tier) are part of TW's subcontracting plan? . . . Confirm that dollars spent on PGBA's subcontract were used in the denominator to calculate TW's subcontracting percentages[,] . . . [and c]onfirm which column (Triwest, PGBA, or Combined) DHA should use when evaluating TW's small business subcontracting plan.

AR TAB 144 at 13942–43 (TriWest Letter from CO Reopening Discussions and Distributing EN 01).

TriWest responded to these questions, providing information on its subcontractor make up and non-biddable costs.  AR Tab 146 (TriWest Response to EN 01).  Inter alia, TriWest responded:

1) . . . [The statement] "[s]upplies and services provided by employees, governmental units, government-endorsed monopolies, non-biddable costs, health care agreements with providers, and network arrangements are excluded" . . . was meant to identify certain costs excluded from the subcontract opportunity denominator.  For further clarity, the term "[s]upplies and services provided by employees" refers to costs associated with employees of TriWest such as wages, taxes, and benefit costs.  The terms "governmental units, government-endorsed monopolies" refer to costs for items such as franchise taxes, public utilities, and telephony local and long distance carrier fees, which are charged by some states and payable to the state or other governmental unit. TriWest does not believe these categories involve subcontracts within the meaning of these solicitation language or FAR.

The term "health care agreements with providers" specifically refers to the RFP language at L.5.2 which provided guidance to all offerors related to network providers.

The term "network arrangements" refers to the TriWest Affiliated and non-affiliated Network Subcontractors that assist with the build and management for portions of TriWest's provider network throughout the Region.  Affiliated Network Subcontractors are considered affiliates as discussed in Question 4. Their services create the core of our successful provider network development and management.

. . . .

2) . . . Our understanding of ["network provider"] is consistent with the language at [RFP] L.5.2 which provided guidance to all offerors related to the exclusion of network providers from the subcontract opportunities. We have excluded these network providers from our plan as indicated in our response to Question 1a.

3) . . . An estimate of the value of contract work excluded under each of the exclusions listed in our plan is provided below:

- 13 -

- Supplies and services provided by employees - $[XXXXX]
- Governmental units and government-endorsed monopolies - $[XXXXX]
- Non-biddable costs - $[XXXXX]
- Health care agreements with providers ([In Accordance With] L.5.2 Network Providers)
  . . . .
- Network arrangements (both Affiliated and non-affiliated Network Subcontractors) - $[XXXXX] breakdown
  . . . .

4) . . . TriWest is incorporated and organized under [Delaware law] as a close corporation . . . TriWest believes that these shareholders should be treated as "affiliates" under FAR 52.219-9(l) based on applicable Small Business Administration Regulations. . . .

. . . .

5) . . . TriWest Healthcare Alliance Corp. . . . is a wholly-owned subsidiary of the TriWest Alliance, Inc. (Alliance); both incorporated as "close corporations" under the laws of Delaware.  The shareholders of Alliance are comprised of independent licensees of the Blue Cross and Blue Shield Association as well as two University Hospital systems.  In addition to the generally applicable restrictions on ownership of the stock of a Delaware close corporation (see Question 4), Alliance additionally has opted under 8 Del. C. § 351, to be managed by its stockholders, and the shareholders are therefore directly represented and deemed directors of the corporation under Delaware law.

. . . .

6) . . . TriWest will utilize the small business described in Question 6 and [the attached exhibits], and none of these were excluded from the Small Business subcontracting goals plan under the listed exclusion.  In addition to these small businesses, we also plan to use the other than small (large) businesses described in [the attached exhibits].

. . . .

7) . . . In evaluating TriWest's FPR Subcontracting Plan under M.10.1 and M.10.2 DHA should use TriWest's subcontracting goals.  (TriWest is prepared to negotiate and modify its plan based on these EN responses and any further discussions.).

. . . .

8) . . . The columns labeled PGBA were provided because TriWest believed that PGBA's subcontracting goals could be relevant in light of the FY2020 NDAA [(National Defense Authorization Act)] Section 870 and 13 CFR § 125.3(a)(1)(i)(C) regarding credit for lower tier subcontracting. . . .  TriWest did not include our expected spend with PGBA in the denominator to calculate TriWest's subcontracting percentages.  In addition, TriWest's planned subcontracting amounts (column titled TriWest) do not reflect any subcontract amounts that may be obtained by PGBA's subcontracting efforts.  The values represented in the columns titled PGBA represent PGBA's opportunities and

expected spend. . . . DHA should use the TriWest column when evaluating our small business subcontracting plan.

AR TAB 146 at 13953–60 (TriWest Response to EN 01).

DHA probed further into TriWest's subcontracting plan and related exclusions in EN 02. AR TAB 148 at 1 (TriWest Letter from CO Reopening Discussions and Distributing EN 02) ("The [g]overnment has reviewed TriWest's response to Evaluation Notice 01 and has additional questions."). Specifically, DHA asked:

1. Please describe how TW's submitted plan meets the L.5.2. requirements, including but not limited to a demonstration of a good faith effort to meet the Solicitation's small business subcontracting goals.

2. TW's EN [01] response states: "'Non-biddable costs' refers to certain costs that TriWest excluded from the subcontract opportunity denominator under the belief that the associated work is commercial work of the kind that does not offer practical, efficient opportunity for small business participation at the direct subcontract level given the scope and scale of the services required (for example, fiscal intermediary/claims processing services)." Please provide rationale for this exclusion using authorities listed in L.5.2., or elsewhere, governing the T-5 procurement.

3. . . . Does TW assert that its Network Subcontractors, which are shareholder entities, are "affiliates" within the FAR 2.101 definition? If so, please provide additional information or documentation supporting TW's statement [in its response to EN 01] that "the shareholders are therefore directly represented and deemed directors of the corporation under the Delaware law."

4. TW's EN [01] response states that dollars subcontracted to Non-Affiliated Network Subcontractors were excluded from its subcontracting plan. Please provide rationale for this exclusion using authorities listed in L.5.2., or elsewhere, governing the T-5 procurement.

5. TW's EN [01] response states that TW does not believe subcontracts with "governmental units, government-endorsed monopolies" involve subcontracts within the meaning of the solicitation language or FAR and therefore costs associated with these goods/services may be excluded from TW's subcontracting plan. Please provide support for this claim.

6. In light of FY2020 NDAA Section 870 and 13 CFR § 125.3(a)(1)(i)(C), which allows offerors to take credit for lower tier small business subcontracting, please confirm which column DHA should use (TriWest, PGBA, or Combined) when evaluating TW's small business subcontracting plan.

7. DHA clarifies it will be applying the definition of the term "affiliates" under FAR 2.101. Please update your subcontracting plan utilizing this definition. In TW's subcontracting plan and in its response to [small business] EN 01, TW notes some subcontracting dollars were excluded from TW's small business subcontracting plan. These exclusions were inconsistent with the direction to offerors under L.5.2. of the solicitation to include "the total dollars planned to be subcontracted." Please submit a revised plan that includes ALL

- 15 -

> subcontracting dollars (in both the total spend and percentage calculations) in accordance with L.5.2., including those previously excluded subcontracting categories.

AR TAB 148 at 13969–70 (TriWest Letter from CO Reopening Discussions and Distributing EN 02).

On 3 March 2023, TriWest responded to EN 02 and submitted a revised subcontracting plan to DHA:  "TriWest Healthcare Alliance appreciates the opportunity to respond to Evaluation Notice 02 and provide the requested revised Small Business Plan."  AR TAB 150 at 13976 (TriWest Response to EN 02).  Specifically, TriWest responded:

1.  . . .  The following matrix (Exhibit EN 4-1) provides the RFP's L.5.2 requirement which identifies 13 elements which were required to be included within TriWest's Small Business Subcontracting Plan.  The matrix identifies by Section and page location within our FPR Subcontracting Plan where we addressed each of these elements along with references to the corresponding FAR 19.704 Subcontracting Plan Requirements and 52.219-9 Small Business Subcontracting Plan.

. . . .

2.  . . . TriWest believed in good faith that these costs could be excluded because, as indicated in our EN [0]1 response, we effectively had no choice but to award this work to a large business given the scope and scale of the services required, and it therefore did not offer the ability to provide assistance to small businesses at the direct subcontract level consistent with efficient contract performance.  Please see FAR 52.219-9(e).  TriWest's further review of the FAR and L.5.2 as a result of the  ENs provided by the [g]overnment has clarified its understanding and interpretation of the small business plan requirements, and per the instruction in Question 7 below we are submitting with this EN response a revised plan that includes the subcontract dollars allocated in this category.

3.  . . . [T]he TriWest shareholder entities should be considered "affiliates" within the FAR 2.101 definition and their planned work as Network Subcontractors may be excluded from subcontractor status within the Small Business Subcontracting Plan. The shareholder entities "control" TriWest by virtue of their legal relationships to TriWest.  In addition to the reasoning previously provided in TriWest's response to Question 4 of EN 01, we provide the following additional information [related to DEL. CODE ANN. tit. 8 § 351] in this regard and in support of the quoted statement above[.]

. . . .

4.  . . . TriWest believed in good faith that these costs could be excluded in reliance on guidance provided by a prior TRICARE Management Activity contracting officer, Bruce Mitterer in 2009, which we believed when developing this plan allowed us to exclude all Network Subcontractors (affiliated and non-affiliated) from the subcontracting plan.  We now realize that our understanding appears to have been mistaken and per the instructions in Question 7 below, we are

submitting with this EN response a revised subcontracting plan that includes the subcontract dollars allocated to Non-Affiliated Network Subcontractors.

5. . . . In response to Question 1 of . . . EN [01], TriWest clarified that the terms "governmental units, government-endorsed monopolies" refer to a category of items such as franchise taxes, public utilities, and local and long distance carrier fees. These items do not represent a "Subcontract" within the meaning of FAR 52.219-9(b) or 13 C.F.R. 125.3(a)(1) because TriWest does not enter into agreements calling for these items for the performance of all or part of the contract. Moreover, they can be excluded from the plan pursuant to 13 CFR 125.3(a)(1)(iii) which provides that "income taxes, property taxes; . . . utilities such as electricity, water, sewer, and other services purchased from a municipality or solely authorized by the municipality to provide those services in a particular geographical region" should not be included in the subcontracting plan's base. Accordingly, we believe that costs included in this category are not subcontractor costs and can properly be excluded from the plan.

6. . . . The language of FY2020 NDAA Section 870 and 13 CFR 125.3(a)(1)(i)(C) appears to permit offerors to take credit for lower tier small business subcontracting however, it is our understanding that these provisions are still in the process of being implemented in the FAR so we are not seeking credit for PGBA's small business subcontracting. Per the instructions in Question 7, TriWest is submitting a revised plan with this EN response which clarifies this point, and DHA should evaluate TriWest's small business subcontracting goals presented in the revised plan.

7. . . . TriWest is submitting a revised plan with this EN response that is in compliance with the solicitation L.5.2 requirements and applicable regulations.

AR TAB 150 at 13980–88 (TriWest Response to EN 02).

On 14 March 2023, DHA closed out corrective action discussions: "Both Offerors will be provided the opportunity to revise their Factor 4 proposals through submission of a Final Proposal Revision. The corrective action discussions accomplished their intended purpose, and the [g]overnment has the information it needs to complete the Factor 4 evaluation. The [g]overnment will now close discussions for the T-5 solicitation and request Final Proposal Revisions from both Offerors for Factor 4 due 17 March 2023." AR TAB 152 at 14007–08 (DHA Closing Out Corrective Action).

On 23 March 2023, after assessing TriWest's responses and revised subcontracting plan, DHA determined TriWest's revised small business subcontracting plan was acceptable:

After initially evaluating Factor 4, [the government evaluators] became aware TriWest may have excluded some amount of subcontracted dollars from its total subcontracted dollars used to calculate its small business subcontracting percentages. Our discussions conducted in corrective action confirmed subcontracted dollars were excluded in the initial plan but were included in its revised plan submitted as a formal proposal revision. As a result, the [g]overnment is confident TriWest's revised proposal now includes all of the subcontracted

- 17 -

dollars required to be included under the T-5 solicitation. . . .  In addition, TriWest's proposal includes its stated policy management commitments toward small business . . . which also supports my determination that the revised proposal is credible and submitted in good faith.

AR TAB 160 at 14025 (DHA Report on TriWest's Revised Small Business Plan).

Regarding plaintiff's supplementation requests at issue now—all  seek documentation supporting TriWest's answers to DHA's EN 01 and 02 questions.  For example, plaintiff's first document request for TriWest's "Healthcare Network Agreements" and "Strategic Alliance Agreements" relates to TriWest's responses to EN 01.  *Compare* First Mot. for Disc. and Suppl. at 15, *with* AR TAB 146 at 13955–57 (TriWest Response to EN 01).  DHA had the opportunity to, but did not, request TriWest's "Healthcare Network Agreements" and "Strategic Alliance Agreements" in EN 02.  *See* AR TAB 144 at 13942–43 (TriWest Letter from CO Reopening Discussions and Distributing EN 01); AR TAB 148 (TriWest Letter from CO Reopening Discussions and Distributing EN 02).  Further, DHA asked questions about and reviewed information surrounding TriWest's corporate structure and contractual relationship with its affiliates during this corrective action.  *See* AR TAB 144 at 13942–43 (TriWest Letter from CO Reopening Discussions and Distributing EN 01); AR TAB 148 at 13970 (TriWest Letter from CO Reopening Discussions and Distributing EN 02) ("Does TW assert that its Network Subcontractors, which are shareholder entities, are 'affiliates' within the FAR 2.101 definition?  If so, please provide additional information or documentation supporting TW's statement that 'the shareholders are therefore directly represented and deemed directors of the corporation under the Delaware law.'").  Similarly, plaintiff requests TriWest produce documentation surrounding its "teaming agreements, subcontracts, contracts, and amendments thereto between TriWest and entities TriWest proposed (in both its July 20, 2022 original proposal and March 3, 2023 revised proposal)."  First Mot. for Disc. and Suppl. at 19.  DHA had the opportunity to, but did not, request such documentation during corrective action.  *See* AR TAB 144 (TriWest Letter from CO Reopening Discussions and Distributing EN 01); AR TAB 148 (TriWest Letter from CO Reopening Discussions and Distributing EN 02); Tr. at 98:10–12 ("THE COURT:  And the CO could have asked for more documentation.  [PLAINTIFF]: Yes, Your Honor.").  Further, DHA asked questions about TriWest's subcontracting methods and requested TriWest submit a new plan.  *See* AR TAB 144 at 13940 (TriWest Letter from CO Reopening Discussions and Distributing EN 01); AR TAB 148 at 13967–70 (TriWest Letter from CO Reopening Discussions and Distributing EN 02).  DHA reviewed this issue during corrective action to the extent it deemed necessary to close its inquiry.  *See* AR TAB 160 at 14025 (DHA Report on TriWest's Revised Small Business Plan).  Unlike in *Impresa*, the Court here need not make assumptions regarding whether and to what extent DHA considered TriWest's alleged misrepresentations and plaintiffs' requested information; DHA's questions during corrective action provide specific evidence of the agency's considerations when making its second acceptability determination.  *See Impresa*, 238 F.3d at 1339.

Neither the parties nor the Court can identify a case in which a court granted supplementation when the relevant agency investigated the material misrepresentation at issue during corrective action to the extent the agency deemed necessary.  At oral argument, the Court asked plaintiff for caselaw on this point, "THE COURT:  . . . [I]s there any . . . parallel case to this situation where the agency had dug into the particular issue, said it was good enough, and

then the Court of Federal Claims ordered supplementation on that very issue?" Tr. at 65:20–24. Plaintiff confirmed it is "not aware of [such a case]." Tr. at 65:25–66:4.

Most cases in which this court grants supplementation involve some form of misconduct, often on behalf of the agency or awardee, necessitating supplementation. *Oracle* is instructive— there plaintiff requested documents, depositions, and communications between the agency and the intervenor "to complete the record with materials it contend[ed] the agency had in front of it during the decision-making process[ and] to supplement the record with material that was not considered." *Oracle Am., Inc. v. United States*, 2019 WL 354705, at \*1–2 (Fed. Cl. Jan. 28, 2019). This court denied plaintiff's motion because "[the] government . . . included in the AR the documents that it developed and considered in making the decisions at issue, and plaintiff ha[d] not made a sufficient showing for this court to permit supplementation or limited discovery." *Id.* at \*6. Similar to *Oracle*, the information plaintiff seeks in this case was already in the administrative record and considered by the agency. *See* AR TAB 160 at 14025 (DHA Report on TriWest's Revised Small Business Plan).

Further, in *Orion*, the plaintiff filed a motion for discovery seeking depositions of the awardee's personnel and the agency's source selection authority to unearth knowledge about the awardee's employment history during the solicitation. *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 344 (2004). The *Orion* court granted discovery and supplementation of the administrative record because employment discussions between the agency and awardee "are not something that would ever normally be found in an agency's record." *Id.* at 345. *Orion* is distinguishable because, unlike DHA in this case, the agency in *Orion* did not review the misrepresentation issue. *Compare* AR TAB 160 at 14025 (DHA Report on TriWest's Revised Small Business Plan), *with Orion*, 60 Fed. Cl. at 340 ("The Solicitation was issued by the [agency] . . . [and] Orion's counsel [at this court] submitted . . . a Motion for Discovery."), *and id.* at 345 ("[T]hree of the four people that Orion requests to depose were not involved in making the agency decision, but rather are connected with the alleged fraud surrounding [the awardee's] bid."). Here, unlike in *Orion*, the agency—even if it elected not to do so—had the opportunity to review the documentation and information requested by plaintiff in its Motions. *See* AR TAB 144 at 13940 (TriWest Letter from CO Reopening Discussions and Distributing EN 01); AR TAB 146 at 13955–57 (TriWest Response to EN 01); AR TAB 148 at 13967–70 (TriWest Letter from CO Reopening Discussions and Distributing EN 02); AR TAB 150 at 13980–88 (TriWest Response to EN 02); *see also* Tr. at 117:15–18 ("[TRIWEST]: . . . TriWest made mistakes. TriWest owned up to them. TriWest explained them. The agency didn't ignore them."). All parties agreed *Orion* provides one of the applicable standards in this case. Tr. at 10:17–18 ("[TRIWEST]: I think all parties agree with the [*Orion*] legal standard, Your Honor."); Tr. at 17:2–7 ("THE COURT: . . . [T]o confirm, the Government would agree with the *Orion* standard that I articulated? [GOVERNMENT]: As a general matter, yes."); First Mot. for Disc. and Suppl. at 12.

Similarly, in *Golden IT*, the court determined plaintiff's misrepresentation allegations related to key personnel were sufficient to warrant discovery because it could not "possibly evaluate a plausible misrepresentation claim based upon only the evidence in the government's possession." *Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 688 (2022). The court reasoned, "[g]iven the nature of . . . [the] misrepresentation argument, this [c]ourt would be

remiss if it did not permit the evidence in question to be added to the record." *Id.* at 688 (citing *Naval Sys., Inc. v. United States*, 153 Fed. Cl. 166, 182 (2021)).  Further, "no one could reasonably expect [such information] to be contained in the administrative record." *Id.* at 680.  Similar to *Orion*, however, there was no opportunity for the court there to assess the reasonableness of the agency's decision in light of the alleged misrepresentations because the agency did not itself review the allegations or the requested evidence.  *See id.* at 686 ("[O]ne of Golden's claims *in this matter* is that SFI improperly received a contract award due to SFI's misrepresentation . . . ." (emphasis added)).  The DHA here, in contrast to the agency in *Golden IT*, had the opportunity to review the alleged misrepresentations.  *See* Tr. at 117:15–18 ("[TRIWEST]: . . . TriWest made mistakes.  TriWest owned up to them.  TriWest explained them.  The agency didn't ignore them.").

Likewise, in *Connected Global*, the plaintiff argued the awardee materially misrepresented the security level of its information technology system and moved to supplement the administrative record.  *Connected Glob. Sols., LLC v. United States*, 160 Fed. Cl. 420, 423 (2022).  The court granted plaintiff's motion to supplement because, "to evaluate [plaintiff's] material misrepresentation allegations, . . . the [c]ourt [needed to] consider information supporting those allegations. . . .  Otherwise, misrepresentations contained within a proposal, whether made intentionally or not, would never be redressable as part of a bid protest review." *Id.* at 424.  *Connected Global* is likewise distinguishable from this case because the allegations of misrepresentation were not considered by the agency—and consequently were not in the administrative record considered by the agency.  *See id.* at 425.  Unlike *Connected Global*, in this case, DHA reviewed the misrepresentation claim at issue and, therefore, the Court need not consider additional information surrounding this claim to conduct its analysis on the merits.  AR TAB 160 at 14025 (DHA Report on TriWest's Revised Small Business Plan).

*L-3* provides another instructive parallel.  There, plaintiff sought to supplement the record with 40 documents, arguing the documents were "necessary for the [c]ourt to adjudicate claims of bad faith, bias, and regulatory violations in the . . . procurement." *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 91 Fed. Cl. 347, 351 (2010)*, amended on reconsideration in part*, 98 Fed. Cl. 45 (2011).  The court reasoned, "[t]he supplementation sought by [p]laintiff in this bid protest encompasses materials that were never considered by the agency in reaching the challenged procurement decision." *Id.* at 357.  At oral argument in this case, plaintiff distinguished *L-3* because of its discussion of bad faith.  Tr. at 37:6–22 ("THE COURT:  So *L3* is different because it's a bad faith or bias claim?  [PLAINTIFF]:  Correct, Your Honor. . . . THE COURT:  So *L3* is not a fair standard in this case?  [PLAINTIFF]:  The standards are quite similar, but it comes down to this being on one edge of the spectrum . . . .  I think it's important to note that even if that is a standard, this is not a mandate that we established definitively on the merits of our material misrepresentation allegation at this juncture in the case.  We have offered some evidence.").  As plaintiff indicates, supplementation is not warranted here because DHA considered plaintiff's misrepresentation claims and the relevant documentation to the extent the agency deemed necessary.  AR TAB 160 at 14025 (DHA Report on TriWest's Revised Small Business Plan); *L-3*, 91 Fed. Cl. at 357.

In *Starry*, the court granted plaintiff's motion to supplement the administrative record with four depositions related to agency misconduct in wrongfully influencing the contract award.

*Starry Assocs., Inc. v. United States*, 125 Fed. Cl. 613, 615–16 (2015).  The court granted plaintiff's motion because "in the face of credible allegations of bias and unexplained agency action, [the court was] left to conclude that the depositions of [the parties] [we]re necessary for the court to resolve the issues presented." *Id.*  Unlike in *Starry*, here DHA affirmatively investigated the material misrepresentation and the relevant evidence to the extent it felt necessary via corrective action.  *See* AR TAB 144 at 13940 (TriWest Letter from CO Reopening Discussions and Distributing EN 01); AR TAB 146 at 13955–57 (TriWest Response to EN 01); AR TAB 148 at 13967–70 (TriWest Letter from CO Reopening Discussions and Distributing EN 02); AR TAB 150 at 13980–88 (TriWest Response to EN 02); AR TAB 160 at 14025 (TAB 160) (DHA Report on TriWest's Revised Small Business Plan); *Impresa*, 238 F.3d at 1339.  In the instant case, unlike in *Starry*, plaintiff does not allege agency bias or lack of good faith.  *Starry*, 125 Fed. Cl. at 615–16; *see* Compl.  The question here is whether DHA acted arbitrarily in its review of TriWest's proposals and responses in corrective action.  The Court can conduct this analysis on the record by reviewing what the agency considered and what it did not.  The Court does not need additional evidence to conduct its analysis.[7]

The above cases elucidate a pattern of this court granting motions to supplement when the agency did not itself consider, or have the opportunity to consider, evidence of the plaintiff's misrepresentation allegations and denying these motions when "[(1) the AR [contains] the documents that [the agency] developed and considered in making [its] decisions . . . and [(2) the] plaintiff has not made a sufficient showing for this court to permit supplementation or limited discovery." *Oracle Am., Inc*, 2019 WL 354705 at *6.  In line with the latter, the administrative record here indicates DHA reviewed plaintiff's allegations of misrepresentation before plaintiff's Complaint was filed at this court.   *See* AR TAB 144 at 13940 (TriWest Letter from CO Reopening Discussions and Distributing EN 01); AR TAB 146 at 13955–57 (TriWest Response to EN 01); AR TAB 148 at 13967–70 (TriWest Letter from CO Reopening Discussions and Distributing EN 02); AR TAB 150 at 13980–88 (TriWest Response to EN 02).  During oral argument plaintiff conceded DHA investigated these misrepresentation issues.  Tr. at 65:17–19 ("THE COURT:  Yeah, but in this one, the agency specifically looked at this control issue, correct?  [PLAINTIFF]:  Yes, Your Honor.").  The Court here need not make assumptions regarding whether and to what extent DHA considered TriWest's alleged misrepresentations and plaintiff's requested information because DHA's questions during corrective action provide specific evidence of the agency's considerations.  *See Impresa*, 238 F.3d at 1339.  None of the cases *supra* address a situation where the administrative record indicates an agency previously considered a protestor's allegations of misrepresentation.  For example, in *Impresa*, the Federal

---

[7] In, *VSolvit*, a case dealing with a related supplementation issue, this court granted the plaintiff's motion to supplement the administrative record to help the Court understand "highly technical issues."  *VSolvit, LLC v. United States*, 151 Fed. Cl. 678, 685 (2020) (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (2009)).  "VSolvit [sought] to supplement the Administrative Record with the declaration of . . . a former . . . Officer with the U.S. Census Bureau, who, [h]aving reviewed the Solicitation and associated documents . . . aver[red] that the Solicitation was missing five categories of information that he 'would have provided . . . so that bidders [could] submit a quality technical and cost proposal . . . to the Agency . . . .'"  *Id.* at 686.  In *VSolvit*, therefore, the requested supplementation related to technical information rather than allegations of misrepresentation.  *See id.*; First Mot. for Discovery and Suppl. at 2 ("TriWest made material misrepresentations . . . .").  Here, because the Court is not presented with such highly technical or sophisticated issues and DHA confronted the alleged misrepresentation and related documentation during corrective action, supplementation is unwarranted.  AR TAB 160 at 14025 (DHA Report on TriWest's Revised Small Business Plan).

Circuit remanded to allow for a "limited deposition of the contracting officer" because the record did not include information as to why the contracting officer decided to accept the certification. *Impresa,* 238 F.3d at 1327, 1340. Here, during corrective action, DHA investigated the issues plaintiff raises to the Court and reviewed the relevant documentation and information to the extent it deemed necessary. AR TAB 160 at 14025 (TAB 160). The Court therefore need not grant discovery and supplementation of the administrative record. *See Impresa*, 238 F.3d at 1339 ("We must assume that the contracting officer considered the [issue] and concluded that it was not misleading. The question is whether this was arbitrary."); *Axiom*, 564 F.3d at 1380 ("The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" (quoting *Murakami*, 46 Fed. Cl. at 735)); *see also* Tr. at 117:15–18 ("[TRIWEST]: . . . TriWest made mistakes. TriWest owned up to them. TriWest explained them. The agency didn't ignore them.").

At this stage, the Court need only address whether the information requested in plaintiff's motion for discovery and supplementation of the record is required for the Court to effectively review DHA's actions on the merits. *See Impresa*, 238 F.3d at 1339. The Court holds it is not. DHA investigated plaintiff's misrepresentation claims and reviewed as much evidence as it deemed necessary before re-awarding the contract to TriWest. *See* AR TAB 144 at 13940 (TriWest Letter from CO Reopening Discussions and Distributing EN 01); AR TAB 146 at 13955–57 (TriWest Response to EN 01); AR TAB 148 at 13967–70 (TriWest Letter from CO Reopening Discussions and Distributing EN 02); AR TAB 150 at 13980–88 (TriWest Response to EN 02). The Court need not review information outside the record, which merely searches to bolster the basis for plaintiff's claims to determine whether DHA's decision not to review additional information was arbitrary and capricious. *See* First Mot. for Discovery and Suppl. *passim*. "The question is whether this [lack of additional information] was arbitrary" before a final award decision. *See Impresa*, 238 F.3d at 1339. The Court reserves judgment on whether DHA's decision not to request additional documentation related to TriWest's alleged misrepresentations in deeming TriWest's proposal acceptable was arbitrary and capricious. *See* Tr. at 72:5–10, 73:4–15 ("THE COURT: . . . How can the Court assess the level of control between TriWest and its shareholder entities without those strategic alliance agreements? [TRIWEST]: Well, respectfully, Your Honor, the Court doesn't need to do that. The Court's reviewing the rationality of the decision by the agency. . . . There's an RFP. There's a contracting officer who is the dedicated person who gets to make these decisions. They have to [make] rational decisions . . . .'").

## A.   Whether Document Request 1 Necessitates Judicial Review

Plaintiff's Document Request 1 states:

Produce TriWest's "Healthcare Network Agreements" and "Strategic Alliance Agreements" identified in TriWest's February 21, 2023 response to DHA's EN 1, Question 5 as explaining TriWest's corporate structure and contractual relationship with Blue Cross Blue Shield and other shareholder entities (GAO AR Tab 146 at 9).

First Mot. for Disc. and Suppl. at 15.  DHA asked questions about and reviewed information surrounding TriWest's corporate structure and contractual relationship with its affiliates during corrective action.  *See* AR TAB 144 at 13942–43 (TriWest Letter from CO Reopening Discussions and Distributing EN 01); AR TAB 148 at 13970 (TriWest Letter from CO Reopening Discussions and Distributing EN 02) ("Does TW assert that its Network Subcontractors, which are shareholder entities, are 'affiliates' within the FAR 2.101 definition? If so, please provide additional information or documentation supporting TW's statement that 'the shareholders are therefore directly represented and deemed directors of the corporation under the Delaware law.'"); Tr. at 57:17 ("[TRI-WEST]: . . . The agency reviewed [TriWest shareholders' control of the corporation] not once, but twice . . . ."). Specifically, DHA reviewed TriWest's response to EN 01, Question 5 related to TriWest's corporate structure and deemed TriWest's response "acceptable." AR TAB 160 at 14025; Tr. at 32:11–15 ("[PLAINTIFF]: . . . [T]he response paragraph, if you see the conclusions, which is the actual TriWest narrative, refers to the fact that these entities are considered affiliates because the shareholder entities control TriWest. That is inaccurate."). DHA had the opportunity to investigate further and request relevant documents related to TriWest's response, such as the Healthcare Network Agreements and Strategic Alliance Agreements requested by plaintiff. Tr. at 56:13–17 ("[THE GOVERNMENT]: If the agency felt that was necessary, it could have [asked for supplemental documents]. . . . [I]n its discretion, it determined . . . this answer was sufficient to demonstrate control and that the shareholders are affiliates."). Despite arguing for supplementation because "the actual TriWest narrative [is inaccurate because it] refers to the fact that these entities are considered affiliates because the shareholder entities control TriWest," plaintiff conceded the DHA could have requested additional documents to understand the question of control: "Well, if the agency didn't have the information, that would be one thing, but it had the statement by TriWest that there was control. So requesting additional documents would have been one way to get to the conclusion, but it had a definitive statement of control in the proposal itself." Tr. at 32:11–15; 71:12–17. The Court, therefore, need not supplement the record with TriWest's Healthcare Network Agreements and Strategic Alliance Agreements because DHA already reviewed TriWest's corporate structure and contractual relationships with shareholder entities during corrective action and chose not to request additional documents. *See Impresa*, 238 F.3d at 1399 ("We must assume that the contracting officer considered the [issue] and concluded that it was not misleading. The question is whether this was arbitrary."). Additional documents may have been helpful to DHA, but DHA found TriWest's explanations acceptable and chose not to request them. AR 160 at 14025 (DHA Report on TriWest's Revised Small Business Plan). The Court need not determine whether misrepresentations occurred, rather, the Court's ultimate aim is to decide whether the acceptance of the alleged inconsistencies by the contracting officer without requesting more information was arbitrary. *Id.* at 1339.

### B.    Whether Document Request 3 Necessitates Judicial Review

Plaintiff's Document Request 3 states:

Produce all teaming agreements, subcontracts, contracts, and amendments thereto between TriWest and entities TriWest proposed (in both its July 20, 2022 original

proposal and March 3, 2023 revised proposal) to rely on for performance of the T-5 contract.

First Mot. for Disc. and Suppl. at 19.  DHA reviewed TriWest's initial proposal and compared it with TriWest's revised proposal during corrective action.  AR TAB 160 at 14025 (DHA Report on TriWest's Revised Small Business Plan); *see also* AR TAB 150 at 13985 (TriWest Response to EN 02).  At oral argument, plaintiff conceded DHA reviewed TriWest's revised proposal and updated subcontracting makeup.  Tr. at 85:13–86:15 ("[PLAINTIFF]:  So the agency was presented with changes in one volume and had limited its corrective action in consideration of that. . . .  The agency just reviewed the Subfactor 4 submissions as part of the corrective action in reaffirming its original award decision.").  The Court need not grant discovery or supplementation of the record with TriWest's "teaming agreements, subcontracts, contracts, and amendments thereto" because DHA already reviewed TriWest's revised proposal involving this same information and had the opportunity to request additional information.  First Mot. for Disc. and Suppl. at 19; *see Impresa*, 238 F.3d at 1339.  It is not the Court's duty to order these documents at this stage in the litigation; it is the agency's duty to fully investigate any inconsistencies before award.  The Court will determine whether the acceptance of the alleged inconsistencies by the agency was arbitrary at the conclusion of the briefing schedule for motions for judgment at the administrative record.  *See Impresa*, 238 F.3d at 1339 (confining the ordered depositions "strictly to placing on the record the basis for the contracting officer's responsibility determination . . . [including] (1) whether the contracting officer . . . possessed or obtained information sufficient to decide the integrity and business ethics issue, including the issue of control, before making a determination of responsibility; and (2) on what basis he made the responsibility determination.").

### C.    Whether the Interrogatory Requests Are Necessary for Judicial Review

Plaintiff requests TriWest answer six interrogatories about TriWest's initial and revised subcontracting plans, its relationship with affiliates, and procurement history:

INTERROGATORY 1:  For each of the following categories, identify each of the entities and their individual associated costs (by entity) that TriWest asserted it "excluded" from TriWest's July 20, 2022 Subcontracting Plan (*see* GAO AR Tab 146 at 7):
"Supplies and services provided by employees - $[XXXXX]"
"Governmental units and government-endorsed monopolies - $[XXXXX]"
"Non-biddable costs - $[XXXXX]"
"Affiliated Network Subcontractors - $[XXXXX]"
"Non-Affiliated Network Subcontractors - $[XXXXX]"

INTERROGATORY 2:  For each of the following categories, identify each of the entities and their individual associated costs (by entity) that TriWest asserted it "excluded" from TriWest's March 3, 2023 Subcontracting Plan (*see* GAO AR Tab 150 at 14):
"TriWest agreements with affiliates"
"employee costs"

"costs for services purchased from 'governmental units, government endorsed-monopolies'"

. . . .

INTERROGATORY 3: Identify all subcontractors relied on in TriWest's initial subcontracting plan (GAO AR Tab 102 at 46-61) and the costs associated with each such subcontractor that were included in TriWest's proposed $[XXXXX] "value of projected subcontracts" (*id.* at 46).

INTERROGATORY 4: Identify all subcontractors relied on in TriWest's revised subcontracting plan (GAO AR Tab 150 at 14-29) and the costs associated with each such subcontractor that were included in TriWest's proposed $[XXXXX] "value of projected subcontracts" *(id.* at 14).

. . . .

INTERROGATORY 5: Identify when TriWest first excluded network subcontractors (Affiliated Network Subcontractors and/or Non-Affiliated Network Subcontractors) from a subcontracting plan for a U.S. Government procurement, and whether TriWest has consistently utilized such exclusions since that date.

. . . .

INTERROGATORY 6: For each of TriWest's VA PC3, CCN R4, and CCN R5 contracts, identify (via a "yes" or "no" answer) whether TriWest used any of the following exclusions at any point during proposal submission or contract performance:

    Supplies and services provided by employees.
    Governmental units and government-endorsed monopolies.
    Non-biddable costs.
    Affiliated Network Subcontractors.
    Non-Affiliated Network Subcontractors.

For any "yes" answers, identify the specific exclusions used and whether they were used during proposal submission, contract performance, or both.

First Mot. for Disc. and Suppl. at 21–26 (footnotes omitted); *see also* Plaintiff's Reply at 1 n.1 (withdrawing Interrogatory 7). These interrogatories all request information regarding the same subject matter as plaintiff's Document Request 1 and Document Request 3: (1) the level of control between TriWest and its affiliates; and (2) TriWest's subcontracting in its revised proposal. First Mot. for Disc. and Suppl. at 21–26. As with plaintiff's document requests, DHA reviewed the focus of plaintiff's six interrogatories during corrective action and found TriWest's responses surrounding its subcontracting plan to be acceptable. AR TAB 160 at 14025 (DHA Report on TriWest's Revised Small Business Plan); Tr. at 102:18–25 ("THE COURT: . . . So the agency should have looked and said one plus one doesn't equal three, show us your equation. [PLAINTIFF]: The agency did not ask for the equation. It just took the answer. THE COURT: Right. But then where is the standard for supplementation for the Court to ask for the equation?"); Tr. at 27:23–25 ("[PLAINTIFF]: To my knowledge, . . . [the agency] accepted the response it was given."). DHA investigated potential misrepresentations during corrective action and accepted TriWest's revised proposal on the record before it. The Court therefore does not need to grant plaintiff's requests to determine whether DHA's actions were arbitrary and capricious. *See Impresa*, 238 F.3d at 1339.

- 25 -

### V.      Conclusion

For the foregoing reasons, the Court **DENIES** plaintiff's Motion for Discovery and Supplementation of the Administrative Record, ECF No. 30, and **DENIES** plaintiff's Supplemental Motion for Discovery and Supplementation of the Administrative Record, ECF No. 32.  Consistent with the Court's 18 August 2023 Scheduling Order, ECF No. 17, plaintiff **SHALL FILE** its Motion for Judgment on the Administrative Record ("MJAR") by 13 October 2023.  Defendants' Responses and Cross-MJARs are due by 3 November 2023.  Plaintiff's Reply and Response is due by 17 November 2023, and defendants' Replies are due by 1 December 2023.  The Court **GRANTS** the government's Unopposed Motion to Amend the Administrative Record, ECF No. 49.[8]

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge

---

[8] *See supra* Section I.D (addressing the government's Unopposed Motion to Amend the Administrative Record).